UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAMUEL ZOOK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-1315 (RJL) |
| | ) | |
| GINA McCARTHY and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) ) | FILED<br>JUN 3 0 2014 |
| Defendants. | ) | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

MEMORANDUM OPINION
(June 2̲8̲, 2014) [Dkt. #12]

Plaintiffs Samuel Zook, Michelle McLain-Kruse, Birgitta Meade, and Annette Laitinen bring this action under the citizen suit provision of the Clean Air Act ("CAA") against the United States Environmental Protection Agency ("EPA") and its Administrator, Gina McCarthy, to compel EPA to regulate emissions from animal feeding operations ("AFOs"). *See generally* Compl. [Dkt. #1]. Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which this court can grant relief. Def. Mot. to Dismiss [Dkt. # 12]. Because the relevant provisions of the Clean Air Act do not impose on EPA a nondiscretionary duty to regulate emissions from AFOs or the AFOs as emissions sources, plaintiffs fail to state a valid claim for relief. Therefore, defendants' motion is GRANTED and plaintiffs' complaint will be DISMISSED.

1

## BACKGROUND

I.  **Statutory Background**

The Clean Air Act establishes a comprehensive program to control air pollution in the United States through combined federal and state efforts. 42 U.S.C. §§ 7401-7671q.

A.  **Sections 108/109: Criteria Pollutants**

As one part of the statutory scheme, EPA identifies certain air pollutants and establishes levels at which it is permissible for those pollutants to exist in the outside air. Section 108(a)(1) of the CAA, codified at 42 U.S.C. § 7408(a)(1), directed EPA to publish in early 1971 and revise "from time to time" a list of air pollutants:

> (A) emissions of which, in [the Administrator's] judgment, cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare;
>
> (B) the presence of which in the ambient air results from numerous or diverse mobile or stationary sources; and
>
> (C) for which air quality criteria had not been issued before December 31, 1970 but for which he plans to issue air quality criteria under this section.

*Id.* § 7408(a)(1)(A)-(C).

For each pollutant listed under Section 108(a)(1), EPA is to issue "air quality criteria" reflecting the latest scientific understanding of the pollutant's effects on the public health and welfare, pursuant to Section 108(a)(2). *Id.* § 7408(a)(2). Under Section 109, EPA then sets National Ambient Air Quality Standards ("NAAQS") for those pollutants (often called "criteria pollutants"), which limit the permissible ambient air levels so as to protect the public health and welfare. *Id.* § 7409. EPA has established air

quality criteria and set NAAQS for six pollutants since the CAA's inception in 1970. 40 C.F.R. pt. 50. States then design plans to control emissions sources so as to maintain concentrations at or below the mandated levels. 42 U.S.C. § 7410.

### B. Section 111: Stationary Sources

Another provision of the CAA, Section 111, provides for EPA regulation of certain stationary sources of air pollution through New Source Performance Standards ("NSPS"). *Id.* § 7411. NSPS focus on limiting emissions based on emission-reduction best practices, rather than on achieving a certain ambient air level of a specific pollutant. *Id.* § 7411(a)(1). Section 111(b)(1)(A) required EPA to list in early 1971 categories of stationary sources to be subject to NSPS which, "in the Administrator's judgment . . . cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." *Id.* § 7411(b)(1)(A). The statute directs EPA to revise the list "from time to time" based on the same criteria. *Id.*

### C. Section 304: Citizen-Suit Provision

Congress allows citizens to use the federal judicial system to compel EPA to comply with its statutory obligations, but only to a limited degree. The CAA's citizen-suit provision allows any person to bring a civil suit against the EPA Administrator for failure to perform "any act or duty under this chapter which is not discretionary with the Administrator," or for unreasonable delay in carrying out such a duty. 42 U.S.C. § 7604(a). "This citizen-suit provision provides the district court with limited but exclusive jurisdiction to order the Administrator to perform nondiscretionary duties."

*Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 63 (D.D.C. 2004). No CAA provision allows citizens to sue EPA directly for failure to perform discretionary acts or duties.[1]

## II. Factual Background

Animal feeding operations, particularly concentrated animal feeding operations, emit substances such as ammonia, hydrogen sulfide, particulate matter, and volatile organic compounds into the air.[2] Compl. ¶13. A number of scientific studies and reports have documented negative impacts from AFO air emissions. *Id.* ¶¶13-23. Among the findings have been elevated ammonia levels, *id.* ¶¶17, 20-21, and increased rates of asthma, *id.* ¶18. At least two reports have recommended that EPA regulate air pollution caused by AFOs. *Id.* ¶¶15, 19. Despite knowledge of these studies, EPA has not regulated certain pollutants emitted from AFOs, or listed AFOs as stationary sources.[3] *Id.* ¶¶24, 33.

Plaintiffs are residents of Winneshiek County, Iowa, who teach at, have attended, or have children who attend a school that was the focus of one of the studies. *Id.* ¶¶5-8, 18. They bring this suit under the CAA's citizen suit provision, 42 U.S.C. § 7604(a), and claim two violations of the Act: (1) failure to list AFO pollutants and establish air quality criteria and NAAQS pursuant to Section 108, *Id.* ¶¶28-31; and (2) failure to list AFOs as

---

[1] Other mechanisms through which plaintiffs may seek the relief they desire are discussed below.
[2] For the purposes of analyzing this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I take all of the factual allegations in the Complaint as true. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).
[3] Plaintiffs do not specify which AFO pollutants, exactly, they request the EPA list as criteria pollutants. The complaint alleges that among the pollutants emitted from AFOs are ammonia, hydrogen sulfide, particulate matter, and volatile organic compounds. Compl. ¶13. The request for relief uses the broad term "pollutants from AFOs." *Id.* at Relief Requested. EPA already has issued air quality criteria and established NAAQS for particulate matter. 40 C.F.R. §§ 50.6, 50.7.

stationary sources of air pollution pursuant to Section 111, *Id.* ¶¶32-35. Plaintiffs request a declaratory judgment that this lack of action violates the CAA, as well as an order directing EPA to so list the AFOs and pollutants they emit. Compl. at Relief Requested. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiffs fail to allege a nondiscretionary duty that would allow them to bring this action under the CAA's citizen suit provision. Def. Mot. to Dismiss 1.

## LEGAL STANDARD

Defendants properly bring this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Sierra Club v. Jackson*, 648 F.3d 848, 853-54 (D.C. Cir. 2011). A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless it alleges facts that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes of analyzing a 12(b)(6) motion to dismiss, the court accepts the factual allegations in the complaint as true, but is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

### I. Sections 108/109: Criteria Pollutants

It is not clear from the face of the complaint whether plaintiffs allege failures to perform or unreasonable delays in performing nondiscretionary duties.[4] The difference is one of time frames: a failure to perform claim requires a date-certain deadline, *see*

---

[4] In their Resistance to Defendant's Motion to Dismiss, plaintiffs acknowledge that courts have interpreted failure to perform duties that are to be performed "from time to time" as unreasonable delay claims. Resistance to Def. Mot. to Dismiss 7 [Dkt. # 14].

*Sierra Club v. Thomas*, 828 F.2d 783, 790-91 (D.C. Cir. 1987), while unreasonable delay does not, *see Am. Lung Ass'n v. Reilly*, 962 F.2d 258, 263 (2d Cir. 1992). However, both types of claims require the statute to impose on the EPA a nondiscretionary requirement to act. 42 U.S.C. § 7604(a). If Section 108 does not impose a nondiscretionary duty, then this court cannot grant relief on either a failure to perform claim or an unreasonable delay claim arising out of that section, and timing questions need not be reached.

"[T]he district court has jurisdiction, under Section 304, to compel the Administrator to perform purely ministerial acts, not to order the Administrator to make particular judgmental decisions." *Envtl. Def. Fund v. Thomas*, 870 F.2d 892, 899 (2d Cir. 1989); *see also Am. Rd. & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 81 (D.D.C. 2012) (citing *Envtl. Def. Fund*). "Congress provided for district court enforcement under section 304 in order to permit citizen enforcement of clear-cut violations by polluters or defaults by the Administrator where the only required judicial role would be to make a clear-cut factual determination of whether a violation did or did not occur." *Sierra Club*, 828 F.2d at 791 (internal quotation marks omitted).

Plaintiffs here request that I order EPA to place pollutants from AFOs on the list and to establish air quality criteria and NAAQS for those pollutants. Unfortunately for the plaintiffs, I cannot! The statute makes clear that EPA's listing duty is a nondiscretionary duty to list any pollutant that EPA has determined meets the criteria in Section 108(a)(1)(A) and (B). *See Bennet v. Spear*, 520 U.S. 154, 175 (1997) (explaining that agency's duty was not discretionary when the imperative "shall" was used in the statute); *Allied Pilots Ass'n v. Pension Benefit Gar. Corp.*, 334 F.3d 93, 98 (D.C. Cir.

6

2003). Case law confirms this reading—the Second Circuit has found EPA must list those pollutants it *already* has determined to "cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare" and result from multiple sources.[5] *Nat'l Res. Def. Council, Inc. v. Train*, 545 F.2d 320, 325 (2d Cir. 1976) (holding that "the Administrator *must* list those pollutants which he has determined meet the two requisites set forth in section 108"). Listing air pollutants under Section 108(a)(1) triggers in turn a mandatory duty to issue air quality criteria and NAAQS for those listed pollutants under Section 108(a)(2) and Section 109. 42 U.S.C. § 7408(a)(2) ("The Administrator shall issue air quality criteria for an air pollutant within 12 months after he has included such pollutant in a list under paragraph (1)."); *Id.* § 7409(a)(2) ("With respect to any air pollutant for which air quality criteria are issued . . . the Administrator shall publish . . . proposed national primary and secondary ambient air quality standards for any such pollutant.").

However, the nondiscretionary duty to list a specific pollutant does not exist unless and until EPA first makes policy determinations as to that pollutant. And, the statute explicitly leaves the endangerment determination of Section 108(a)(1)(A) up to the EPA Administrator's sole judgment. Indeed, "the use of 'in his judgment' reveals that Congress sought to assign the agency the responsibility to judge or determine *which* pollutants belong to the category the agency is required to regulate . . . ." *Friends of the*

---

[5] The *Train* court determined that Section 108(a)(1)(C) does not impose an independent requirement necessary to trigger mandatory listing when the criteria in Sections 108(a)(1)(A) and (a)(1)(B) have been met. *Nat'l Res. Def. Council, Inc. v. Train*, 545 F.2d 320, 327-28 (2d Cir. 1976). EPA contends *Train* was wrongly decided on this point. Because EPA has made no judgments satisfying Sections 108(a)(1)(A) and (a)(1)(B), I do not reach the issue. Def. Mot. to Dismiss 15 n.11.

*Earth v. EPA*, 934 F. Supp. 2d 40, 49 (D.D.C. 2013) (analyzing Section 231 of the CAA, codified at 42 U.S.C. § 7571). Knowledge—or even acknowledgement—of a pollutant's adverse effects does not constitute the endangerment determination necessary to trigger the duty to list. *See Envtl. Def. Fund*, 870 F.2d at 899. In the absence of an affirmative determination made by EPA that particular AFO air pollutants endanger public health or welfare and result from multiple sources, there is no mandatory duty to include those pollutants on the Section 108(a)(1) list.

Plaintiffs in this case do not allege, nor could they, that EPA already has determined that AFO pollutants satisfy the criteria in Section 108(a)(1)(A) and (B). *See generally* Compl. Therefore, there is no nondiscretionary duty that would allow plaintiffs to bring a claim under Section 304 to order EPA to list those pollutants under Section 108(a)(1). As such, granting plaintiffs' requested relief would improperly usurp EPA's exclusive authority to make the substantive judgment that AFO pollutants "cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7408(a)(1)(A). In addition, the requirements under Sections 108(a)(2) and 109 for EPA to establish air quality criteria and NAAQS apply only to those pollutants listed under Section 108(a)(1). Thus, there is no nondiscretionary duty to issue such standards for pollutants EPA has not found to fulfill Section 108(a)(1)'s discretionary criteria.[6]

---

[6] Even if I were to construe plaintiffs' request as a narrower one to compel EPA to make a judgment— any judgment—regarding the criteria outlined in Section 108(a)(1) (which may then trigger the duty to establish air quality criteria and NAAQS), plaintiffs still do not state a claim upon which I can grant relief. The statutory language of 42 U.S.C. § 7408(a)(1) does not impose a clear nondiscretionary duty for EPA to make an endangerment finding for any particular air pollutants, including AFO air pollutants.

## III. Section 11: Stationary Sources

Finally, the same reasoning and conclusion apply to plaintiffs' request that I order EPA to list AFOs as stationary sources under Section 111. Compl. at Relief Requested. The language and structure of the two provisions are similar: Section 111(b)(1)(A) provides that EPA shall list stationary sources which, "in the Administrator's judgment . . . cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A). Although this creates a nondiscretionary duty for EPA to list those stationary sources which it already has judged to endanger public health or welfare, it does not create a nondiscretionary duty when such a determination has not been made. Nor does it create a nondiscretionary duty to make an endangerment finding—one way or the other—for any category of stationary sources, for the reasons discussed above and in *Friends of the Earth*. 934 F. Supp. 2d 40. Plaintiffs may file a rulemaking petition seeking their desired policy outcomes, but the absence of a nondiscretionary duty to list AFOs as stationary sources means plaintiffs do not state a claim upon which this court can grant relief under Section 304.

---

*See Friends of the Earth v. EPA*, 934 F. Supp. 2d 40, 51 (D.D.C. 2013) (examining similar language in another part of the statue and concluding that "[s]ince the language of the statue does not clearly create a mandatory duty to undertake the endangerment analysis, the Court . . . cannot compel the agency to begin [an endangerment analysis] under section 304."). Other avenues exist through which plaintiffs may request that EPA perform the desired actions. *Id.* 54-55.

## CONCLUSION

Thus, for all the foregoing reasons, defendants' Motion to Dismiss [Dkt. #12] is hereby GRANTED. An appropriate order shall accompany this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge